UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20470-Cr-LENARD

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ALVARO LOPEZ TARDON,

    Defendant.

_____/

**DEFENDANT'S UNOPPOSED MOTION FOR DEPOSITIONS
OF SPANISH WITNESSES HERNANDEZ AND GARCIA
PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 15**

Defendant Alvaro Lopez Tardon files this motion to permit the taking of depositions of essential witnesses pursuant to Federal Rule of Criminal Procedure 15(a)(1) and the Due Process Clause of the Fifth Amendment to the United States Constitution. In support of this motion, Defendant states as follows:

### BACKGROUND

1.    The government alleges that Defendant was involved in a drug trafficking conspiracy that operated outside of the United States. Specifically, according to the indictment, Defendant was involved in the shipment of drugs between South America and Europe, and ultimately laundered the proceeds of those transactions in violation of 18 U.S.C. § 1956, and 18 U.S.C. § 1957.

2.      Indeed, there are criminal proceedings currently pending in Spanish courts arising from a similar set of underlying facts.

3.      It is necessary to procure the testimony of two individuals who live in Spain and are involved in the Spanish proceedings because they have first-hand knowledge of essential facts that tend to exculpate Defendant.

4.      Two attorneys working with defense counsel traveled to Spain to interview the two prospective witnesses, based upon which the following is proffered as their expected testimony.

**Arturo Miguel Garcia Hernandez** is an attorney with offices at San Bernardo, 10 - 1. ° Dcha.  Madrid, Spain 28015, who has represented the Defendant and his family for approximately twenty years.

The original source of Defendant's wealth was created through the sale of two apartments and from an investment in the Spanish stock market where Defendant realized substantial gains.  The profits from the sale of these two apartments and the capital gain from the stock purchase and sale acted as the seed money for what ultimately became the Collection, a car dealership owned by Defendant.  The property that would ultimately become the Collection's first showroom was purchased with the money Defendant earned from his stock investment and the sale of two family properties. The company's initial inventory was purchased with the funds remaining from the various investment gains.  Within months of operation, the Collection was

granted the exclusive rights to sell an ultra luxury brand of car, Pagani, in Madrid. Mr. Hernandez assisted in te legal work to merge the Collection and Vanaklum for the purpose of obtaining favorable tax treatment on both the importation and sale of vehicles.

Mr. Hernandez is personally familiar with a client of the Collection, Angel Enciso, who regularly purchased luxury cars from the defendant to sell at his own dealership. Angel Enciso and his companies (Giralt Tres and Grupo Zuinda) are involved with transactions related to Counts 2, 3, and 4 of the indictment against Alvaro. Angel Enciso lives in West Africa. Giordano Cargiolli, Angel Enciso's business partner, deposited large amounts of cash into The Collection's bank account for the purchase of several cars. That money ultimately made its way to the United States to purchase property at The Continuum in South Beach in the name of Fabiani Krentz. (Funds from Mr. Enciso thus represent a significant source of the funds deposited in the bank accounts of the Collection, which are the subject of the Indictment.)

The business relationship between Defendant and Angel Enciso became strained because Mr. Enciso purchased and took possession of several cars but did not pay for them. As collateral for repaying the 1.2 million Euros owed to Defendant, Mr. Enciso offered Defendant a "Velazquez" painting, "El Almuerzo," Mr. Enciso claimed "El Almuerzo" was worth 20 million Euros. Under an agreement between

Defendant and Mr. Enciso, if Mr. Enciso did not repay Defendant within a fixed time period, then ownership of the painting would transfer to Defendant.

Mr. Hernandez drafted the security agreement that allowed for Defendant's then-wife Sharon Cohen to obtain ownership of the painting. Because laws in Spain forbade Spanish citizens, like Defendant, from owning "national treasures" such as a "Velasquez" painting, Mr. Hernandez structured the transaction so that Sharon Cohen, who is not a Spanish citizen, would take ownership of the painting in the event of default.  This would allow for the lawful transfer of the painting while also keeping it out of reach of the Spanish Government.  Mr. Enciso ultimately did not timely pay the money owed to Defendant, and Sharon Cohen took ownership of the painting as per the contract. After the painting was under Sharon Cohen's control, Defendant held a meeting in Ibiza to meet with a Croatian man who offered to buy the "Velazquez" for cash.  Mr. Hernandez has no further information regarding the disposition of the painting.

Mr. Hernandez also is personally familiar with transactions between Defendant and Raju Kischinchand (an individual charged in the Spanish proceedings), who owns/controls Ijoy, through which Mr. Kischinchand was engaged in a business with Defendant to purchase televisions in China. Mr. Kischinchand intended to purchase televisions and other electronics from Chinese manufactures who require immediate payment.  Because typical banks were not comfortable lending large amounts of

money for this type of venture, Mr. Kischinchand approached Defendant to raise capital resulting in a loan agreement under which Mr. Tardon would provide Mr. Kischinchand capital, and within six months be reimbursed his principal and interest. In addition to receiving payments from Ijoy for loan repayments, the Collection received commission payments for other transactions when the Defendant's brother Artermio Lopez-Tardon brokered sales of the televisions and other electronics purchased by Mr. Kischinchand.

**Ruben Nieto Garcia** is an accountant with offices at Nieto y Asociados, located at Eros,  16 - 1° C-D (Planetario)  Madrid, Spain 28045, and was the Defendant's accountant during the government's alleged conspiracy period.  Part of Mr. Garcia's job duties included accounting for all revenue received and expenses paid by the Collection.  Defendant had multiple investments that regularly provided Defendant with extra revenue, including several rental properties in Spain operated by the Defendant that sometimes resulted in rental payments in the form of cash. Deposits also included the proceeds of a commercial arrangement in which the Collection received commission payments for brokering sales of electronics on behalf of Mr. Kischinchand and others. Thus, Mr. Garcia's testimony will explain that the source of the funds that relate to Counts 6, 8, 9, 12, and 13.

5.   Both witnesses reside and are citizens of Spain. Both are implicated in the criminal investigation in Spain regarding Defendant. They are not able to commit to traveling to the United States.  Nor are they subject to the subpoena powers of the

United States.

6.     AUSA Gonzalez has stated that the government has no objection to the motion provided that Defendant waives his attorney-client privilege with repsect to Mr. Hernandez so that the government can cross-examine Mr. Hernandez about communications between the two. Defendant is agreeable to that caveat.

7.     AUSA Gonzalez proposes to participate in the deposition via video feed. Defendant is agreeable to that procedure, as well.

## **LEGAL STANDARDS**

The Federal Rules of Criminal Procedure provide, in relevant part, that a "party may move that a prospective witness be deposed in order to preserve testimony for trial," and that the "court may grant the motion because of exceptional circumstances and in the interest of justice. . . ." Fed. R. Crim. P. 15(a)(1). While it is true that "[d]epositions generally are disfavored in criminal cases," *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993), that policy preference is primarily intended to protect a defendant's Sixth Amendment right to confrontation. *Id.* at 1551-52. Where depositions are necessary to preserve the a defendant's right to a fair trial, the interests of justice militate in favor of permitting depositions.

Courts in the Eleventh Circuit consider three factors in determining whether "exceptional circumstances" warrant the taking of depositions: namely, whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony

material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. *United States v. Ramos*, 45 F.3d 1519, 1522-23 (11th Cir. 1995) (emphasis omitted) (citing *Drogoul*, 1 F.3d at 1554).

## ANALYSIS

Without the testimony of the absent witnesses, Defendant will essentially be deprived of the opportunity to tell his side of the story and the jury will be left with a one-sided presentation of the government's case. Defendant's Constitutional right to present a defense to the criminal charges against him depends on his ability to introduce the exculpatory testimony of his attorney and his accountant. These essential witnesses are in the best position to explain Defendant's legitimate business activities.

### A.   The Witnesses Are Unavailable

A "substantial likelihood of unavailability" exists when the proposed deponent is either unwilling to testify at trial or beyond the subpoena powers of the United States. *Ramos*, 45 F.3d at 1523. Indeed, even when a proposed deponent has declared his willingness to testify at trial, he may nonetheless be found to be unavailable if he cannot be subpoenaed upon changing his mind. *Id.* The party seeking the depositions may show the probable unavailability of a prospective deponent "through affidavits or otherwise." *Drogoul*, 1 F.3d at 1553 (quoting *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir.), cert. denied, 486 U.S. 1026 (1988)) (internal quotation marks

omitted). That demonstration, however, is not required to be conclusive before a deposition may be taken. *Id.* (citing *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)). Instead, "[a] more concrete showing of unavailability . . . may be required at the time of trial before a deposition will be admitted in evidence." *Id.* (citing Fed. R. Crim. P. 15(e)1).

Because the witness are not subject to subpoena and are not planning to travel the United States, they are unavailable.

### B.     The Absence of This Testimony will Result in an Injustice

Defendant is charged with laundering the proceeds of European drug-trafficking escapades and seeks to offer the testimony of these two witnesses to directly rebut the material allegations set forth in the indictment by explaining the nature of Defendant's legitimate business operations that the government seeks to characterize as money laundering. The testimony of these potential witnesses directly responds to the charges in the Indictment and supports the defense that Defendant had legitimate sources of income and deposits. *See, e.g., United States v. Word*, 129 F.3d 1209, 1213 (11th Cir.1997) (exclusion of evidence of true nature of relationship between alleged criminal participants compelled reversal of conviction where government argued inference of defendant's knowledge from claimed criminal relationship); *United States v. Todd*, 108 F.3d 1329, 1334 (11th Cir.1997) (holding that exclusion of contextual evidence supporting good faith defense deprived

defendant of fair trial).

Where, as here, the proffered testimony "goes to the very heart" of the case, it satisfies the materiality requirement under Rule 15(a)(1). *See Drogoul*, 1 F.3d at 1554.

### C. There Are No Other Countervailing Factors

There are no countervailing factors respecting the proposed depositions that would result in any injustice to the government. *Drogoul*, 1 F.3d at 1554. In the *Ramos* case, for example, the government argued that foreign witness depositions would result in an injustice because the inability to enforce the perjury statutes rendered the testimony suspect. *Ramos*, 45 F.3d at 1524. The Eleventh Circuit disagreed and, relying on *Drogoul*, held that the government would not be unfairly prejudiced by permitting the defendant to preserve the testimony of foreign witnesses by deposition. *Id.* As in *Drogoul* and *Ramos*, the interest of justice requires that the defendant be allowed to depose these witnesses while they are accessible and able to testify.

### CONCLUSION

Under the factors enumerated in *Drogoul* and the arguments and authorities cited, Defendant has established exceptional circumstances as required by Federal Rule of Criminal Procedure 15(a)(1), permitting the granting of these two depositions. Defendant respectfully requests that the Court grant his motion.

Undersigned conferred with AUSA Gonzalez who advised that the government does not object to the taking of the depositions (i.e., preserving the testimony). However, at this time, the government is not agreeing to their introduction (i.e., government reserving right to assert objections to admissibility) and does not agree that the witnesses necessarily will be "unavailable" at the time of trial (the fact that witnesses "cannot commit" to traveling to the United States at this time, does not mean they are, in fact, unavailable for a future trial date).

Respectfully submitted,

RICHARD C. KLUGH, P.A.
40 N.W. 3rd Street, PH 1
Miami, Florida 33128-1838
Tel. (305) 536-1191
Fax (305) 536-2170
E-mail  klughlaw@gmail.com

 /s/  Richard C. Klugh
Richard C. Klugh, Esq.
Fla. Bar No. 305294

BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.
201 South Biscayne Boulevard,
Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421
Fax (305) 358-2006
E-mail HSrebnick@RoyBlack.com

 /s/ Howard Srebnick
Howard Srebnick, Esq.
Florida Bar No. 919063

### DECLARATION OF NOAH FOX

Pursuant to 28 U.S.C. section 1746, Noah Fox, Esq., declares that he is a member of the Florida Bar and bar of the Southern District of Florida. He and another attorney Christopher Jaramillo traveled to Spain and personally interviewed the two prospective witnesses. The proffer contained in this motion fairly represents the

information provided by the two witnesses, who advised that they cannot commit to travel the United States for the trial of Defendant but would voluntarily appear at deposition in Spain.

  /s/ Noah Fox
Noah Fox, Esq.
Florida Bar No. 66466

## CERTIFICATE OF SERVICE

I hereby certify that a draft of this motion was emailed to AUSA Gonzalez on March 22, 2014

                                                 /s/ Howard Srebnick
                                                Howard Srebnick, Esq.
                                                Florida Bar No. 919063